UP-RIGHT, INC., a corporation, and Wallace J. S. Johnson, an individual, Plaintiffs,

v.

ALUMINUM SAFETY PRODUCTS, Inc., a corporation, Defendant.

No. 4-57 Civ. 147.

United States District Court
D. Minnesota,
Fourth Division.
Aug. 26, 1958.

This cause came before the Court on defendant's motion to dismiss on the ground of improper venue. Defendant's motion included other grounds for relief, but the venue question is the only matter which will be considered here.

John G. Dorsey and James B. Vessey (of Dorsey, Owen, Barker, Scott & Barber), Minneapolis, Minn., and Voorhies, Dilley, Keck & Rowley, Greenville, Pa., for defendant in support of said motion.

John D. Gould (of Merchant & Merchant), Minneapolis, Minn., and Mellin, Hanscom & Hursh, San Francisco, Cal., for plaintiff in opposition thereto.

NORDBYE, Chief Judge.

On December 18, 1957, Up-right, Inc., a California corporation, and Wallace J. S. Johnson, a resident of California, filed suit in this District for patent infringement against defendant, a Pennsylvania corporation. The patent allegedly infringed is one for aluminum scaffolding. Service was obtained upon one Wayne K. Brush, a Minnesota resident, and "regional sales manager for defendant." The venue is governed by 28 U.S.C.A. § 1400(b), which provides that

> "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

There are, therefore, two questions before the Court: (1) Did defendant have a regular and established place of business in Minnesota; and (2) did the defendant commit acts of alleged infringement in this State?

It appears that Brush is the sales representative for defendant in the area covering Minnesota, the Dakotas, and western Wisconsin. The defendant is not licensed to do business in this State. Brush solicits business and takes orders for defendant's product in the area allotted to him, including Minnesota. All orders taken by him are not valid or binding upon the defendant unless and until the same shall have been approved and signed by a duly authorized officer at the home office in Pennsylvania. It is clear that any orders produced and procured by Brush which become sales are accomplished in Pennsylvania and not in Minnesota. Brush lives in a duplex and works out of his home in Minneapolis. He took up residence in this State in June, 1957. There are no other employees of the defendant here. Brush's wife apparently assists him in taking care of correspondence, etc., and uses a typewriter for that purpose. She does not receive any compensation, however, from the defendant, and the typewriter belongs to Brush, not to the defendant. Defendant does pay, however, for a separate telephone listing in both the alphabetical and classified directories as "Aluminum Safety Products, Inc." The telephone number is listed for the address at which Brush resides. Inasmuch as Brush did not reside in Minneapolis prior to June, 1957, the listing was not in the telephone directory when suit was brought or when the alleged infringement took place. Brush has a desk in his bedroom which he uses for keeping records and correspondence. None of the so-called office equipment, however, belongs to the defendant. Brush's garage is used for storing some of the samples of defendant's products. Defendant pays no rent for the use of Brush's premises. Defendant furnishes Brush, however, with the use of an automobile in covering his territory. The mailing address of the defendant in Minnesota is at Brush's home. Telephone calls are received and emanate from there in connection with defendant's business in this State and presumably elsewhere. Customers of the defendant do not call personally at Brush's residence. The actual solicitation of business for the defendant in this State is primarily carried on by Brush personally through the use of the automobile furnished to him by the defendant. He carries no inventory, makes no collections, does not pass on credits, and does not perform any business for the defendant in this State except to solicit and take orders and forward them to the defendant at its home office for acceptance or rejection. All orders filled by the defendant are shipped direct to the customer.

There is no question but that defendant *is doing business in this State in* the sense that Brush, its employee, is engaged in the solicitation of orders, all of which, however, are subject to the defendant's approval. The question arises, Do these facts justify a finding that defendant maintains a regular and established place of business within this District?

The fact that Congress required not only that venue must be based upon acts of infringement occurring in the particular District, but also a showing that such alleged infringer has a regular and established place of business therein, would indicate that it was fully cognizant of the problems confronting the one who was charged with patent infringement. It is evident that Congress intended that the forum of a patent infringement suit should be one reasonably convenient to the defendant.

It is true that no reliable test has been devised by which a court can determine whether or not a foreign corporation maintains a regular and established place of business within any certain District. In some instances, the very extent and manner of doing business in a State may be sufficient to support a finding

that the alleged infringer has a regular and established place of business therein. Ronson Art Metal Works, Inc., v. Brown & Bigelow, Inc., D.C.S.D.N.Y.1952, 104 F.Supp. 716, affirmed 2 Cir., 199 F.2d 760. Generally, however, something more tangible is required by the courts. In Elevator Supplies Co. v. Wagner Mfg. Co., D.C.S.D.N.Y., 54 F.2d 937, 938, the court held that

" * * * the maintenance of an office by a foreign corporation, however long continued and however well equipped, to be used by its employees in soliciting business and doing things incidental to procuring orders for goods manufactured and sold by such corporation in another jurisdiction, does not constitute the maintenance of a regular and established place of business within the meaning of 28 U.S.C.A. § 109." Section 109 is the predecessor to § 1400 (b).

The Elevator Supplies Co. case relies upon W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808, in which it appears that a sales representative maintained an office for a foreign corporation in New York. The representative, however, merely solicited orders and forwarded them when received to the home office for execution. The court there held that the operation of such an office was insufficient to support the allegation of a regular and established place of business.

There are cases, however, which markedly have relaxed the rule indicated in the Tyler case and seemingly espouse the so-called more modern and liberal rule. Shelton v. Schwartz, 7 Cir., 1942, 131 F. 2d 805; Urquhart v. American La France Foamite Corp., 1944, 79 U.S.App.D.C. 219, 144 F.2d 542, certiorari denied 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625; Federal Electric Products Co. v. Frank Adam Electric Co., D.C.S.D.N.Y.1951, 100 F.Supp. 8; Latini v. R. M. Dubin Corp., D.C.N.D.Ill.1950, 90 F.Supp. 212; Kerr v. Port Huron Sulphite & Paper Co., D.C.D.N.J.1957, 157 F.Supp. 685;

Sherman Paper Products Corp. v. Sorg Paper Co., D.C.E.D.Mich.1958, 161 F. Supp. 44.

Perhaps the broadest language used in construing the term "a regular and established place of business" is to be found in Shelton v. Schwartz, supra, 131 F.2d at pages 808–809:

"Nor should the term 'a regular and established place of business' be narrowed or limited in its construction. Why should it be? The words do not necessitate nor warrant it. A foreign corporation may have a regular and established place of business, although the business therein is merely securing orders and forwarding them to the home office of the non-resident corporation. To hold otherwise would be contrary to the factual information which is possessed by all and which must be attributed to Congress.

\* \* \* \* \* \*

"Defendant's only urge is that the agent could not make sales, but only solicit orders. The statute does not speak of the kind of business which those in charge of the 'regular and established place of business' shall do. It is sufficient to observe that a 'regular and established place of business' may be found to exist, though the court does not know whether the business conducted therein was soliciting, or soliciting and selling. Emphasis must be on the existence of the regular and established place of business,—not on the nature or character of the business conducted there."

However, the facts in the Shelton case are readily distinguishable. There, the defendant corporation had maintained in Chicago an office for many years, and that office was used by two salaried employees to solicit orders for the defendant's products. It appeared that the defendant leased an office for that specific purpose; in fact, the lease especially referred to the space rented as "an office

for said company's business." In Denis v. Perfect Parts, D.C.Mass., 142 F.Supp. 259, the court was confronted with a factual situation comparable to the instant situation. There, the court stated, at page 261,

> "As stated before, defendant is a New York corporation. I find that it does not come within the second clause of this section. Although salesman has his home in Massachusetts, customers do not come there. He operates principally out of his car. Defendant's name does not appear directly in connection with either his house or his car. It pays none of his rent or other expenses. So far as appears, it does not care where he lives. While one might say that if, because of salesman's activities, defendant is doing business in Massachusetts, salesman's own pied-a-terre is defendant's 'regular and established place of business', a recent Massachusetts case indicates that this does not necessarily follow. Jet Manufacturing Co. v. Sanford Ink Co., 330 Mass. 173, 176, 112 N.E. 2d 252. I feel that an established place of business requires something more evident and tangible than appears in this case."

The court found, however, that every corporation "doing business" within a particular state was a resident under Section 1400(b) and suable as a resident. This latter proposition was rejected in Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786, but the rationale relative to regular and established places of business remains intact. See also Hoegger v. F. H. Lawson & Co., D.C.S.D.N.Y.1929, 35 F. 2d 219; Candas v. Agnini, D.C.S.D.N.Y. 1936, 14 F.Supp. 21; New Wrinkle v. Fritz, D.C.W.D.N.Y.1939, 30 F.Supp. 89; Haight v. Viking Pump Co. of Delaware, D.C.E.D.Wis.1939, 29 F.Supp. 575; Kam-Kap, Inc., v. Worldsbest Industries, D.C. S.D.N.Y.1956, 140 F.Supp. 854.

Plaintiff recognizes that there is a marked conflict in the decisions as to the interpretation of the venue statute, but urges that there has been during the more recent years a noticeable liberalization of the concept of doing business in a State for jurisdictional purposes, International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, as well as an expansion and broadening of the term "having a regular and established place of business" in determining whether proper venue has been selected in patent cases. Undoubtedly modern transportation and methods of communication have eased the burden of one sued in a District other than a place of his residence. But here, however, Brush had been defendant's sales representative in Minneapolis for some seven months when this suit was instituted. Apparently defendant's so-called place of business in this State is entirely dependent upon where Brush may live in the city. No doubt he could move to a hotel or apartment, or even occupy space with another family, and he would be conducting defendant's business in this State in substantially the same manner as now exists. It is true that a regular and established place of business is not to be determined necessarily on whether it is located in a downtown office building. But it would seem that a regular and established place of business within the meaning of the venue statute must connote a business establishment of a non-resident defendant which has a more substantial and durable relationship to the defendant's business than that which is presented here. If Brush for some reason on his own volition resigned, defendant's place of business in this State would immediately end, and any property of the defendant, such as the car and samples, would be located on premises over which the defendant would have no control. Many traveling salesmen are furnished a car by an employer for the solicitation of business in Districts other than the employer's residence. Such salesmen may carry samples and they may conduct much of the correspondence and telephone communications from their residences, which may

be located in hotels or in homes in which they regularly reside. However, it is difficult to reconcile such a location, without more, as one which constitutes a regular and established place of business of a non-resident employer. Granted that there has been a tendency by some of the courts to liberalize the rule as to what constitutes a regular and established place of business of a non-resident defendant under the patent venue statute, I find no circumstances here which would seem to justify an application of the so-called liberal rule to the instant situation. Certainly, the balancing of the equities do not suggest that defendant should be made amenable to a suit in this forum.

I conclude, therefore, that the showing requires a finding that defendant did not have a regular and established place of business in this District within the purview of the venue statute in question, and the motion to dismiss must be granted. Arriving at that conclusion, I do not find it necessary to pass upon the sufficiency of the showing as to the alleged infringement. However, it may be observed in passing that the alleged acts of infringement do not in any way buttress the position of the plaintiff with reference to venue in this District. The one sale which may be sufficient to constitute a Minnesota sale rather than a Pennsylvania contract was planned purposely and carried out by a representative of the plaintiff with the designed object of laying the ground for an alleged act of infringement. This isolated act brought about by plaintiff's own connivance is indeed inconsistent with the views of the court in Ronson Art Metal Works Inc., v. Brown & Bigelow, Inc., supra, 104 F.Supp. at page 724, when it stated with reference to "acts" of infringement that "The legislative direction looks to plurality and continuity of conduct." Whether the demonstrations of defendant's products by Brush in this District constitutes a "use" of the alleged infringing product in this State within the meaning of 35 U.S.C.A. § 271(a), the Court does not determine.

In view of the foregoing, therefore, it follows that plaintiff's action must be, and it hereby is, dismissed for lack of proper venue. It is so ordered. An exception is allowed.