**DAN–DEE IMPORTS, INC., Plaintiff,**

v.

**WELL–MADE TOY MFG. CORP., Defendant.**

No. 80 C 3409.

United States District Court,
E. D. New York.

Oct. 19, 1981.

Ostrolenk, Faber, Gerb & Soffen, New York City, by Edward A. Meilman, New York City, for plaintiff.

Strassberg & Strassberg, New York City, by Louis Strassberg, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Defendant ("Well-Made") has moved to dismiss this copyright infringement action for want of subject matter jurisdiction because plaintiff ("Dan-Dee") assertedly failed to comply with certain copyright registration and transfer recordation requirements with respect to its copyright in the Bunny Clip-on Doll, the work allegedly infringed.

More specifically, Well-Made contends first that the present action was improperly instituted in that registration of the copyright in issue, without which an "action for infringement shall [not] be instituted," 17 U.S.C. § 411(a), was obtained by Dan-Dee on May 17, 1979 in purported contravention of copyright office regulations. Those regulations require applications for copyright registrations to be made only by "the owner of any exclusive right in a work," or a "copyright claimant," 37 C.F.R. § 202.-3(c)(1), who may be either the author of the work of a person or organization claiming rights under the copyright originally belonging to the author, id., § 202.3(a)(3)(i), (ii). Well-Made bases its contention on the

fact that the earlier of two written agreements assigning Dan-Dee the copyright for the Bunny Clip-on Doll from its author, Angel Sewing Co., is dated June 10, 1979, and therefore Dan-Dee was not a proper "claimant" when the registration issued to it the previous month. Dan-Dee counters that assignment of the copyright actually was made in May 1978 by an oral agreement between Dan-Dee and Angel Sewing, which purportedly is referred to in the June 1979 assignment.

Well-Made's second contention is that Dan-Dee's commencement of this action on December 10, 1980, some three months before it recorded the assignment from Angel Sewing on March 19, 1981, contravened 17 U.S.C. § 205(d), which provides that:

"No person claiming by virtue of a transfer to be the owner of copyright or of any exclusive right under a copyright is entitled to institute an infringement action under this title until the instrument of transfer under which such person claims has been recorded in the Copyright Office, but suit may be instituted after such recordation on a cause of action that arose before such recordation."

Dan-Dee has sought leave to amend its complaint to make two changes with respect to defendant's name and location of its principal place of business, which defendant does not oppose, and to allege that a written acknowledgment of the acquisition from Angel Sewing has been recorded in the United States Copyright Office.

For the reasons which follow the Court denies the motion to dismiss and accepts plaintiff's new pleading.

We deal first with Well-Made's contention that Dan-Dee was not entitled to obtain the copyright registration when it did. The earlier of the two written assignments which are the focus of this dispute provided in part as follows:

"the Author [Angel Sewing] does hereby irrevocably grant and assign to DAN–DEE IMPORTS, INC., . . . the copyrights in and the rights hereinafter set forth in the original works of art to be created or which were created by the Author pursu-

ant to agreement between said Author and said DAN–DEE IMPORTS, INC., with said original works of art being embodied in:

CLIP–ON EASTER RABBIT a/k/a BUNNY CLIP–ON hereinafter called the copyrighted works."

The second, dated July 31, 1980, omitted the earlier assignment's reference to an agreement, providing only that for consideration received

"the Author [Angel Sewing] does hereby irrevocably grant and assign to DAN–DEE IMPORTS, INC., . . . the copyrights in and the rights hereinafter set forth in the original works of art which were created by the Author, with said original works of art being embodied in:

CLIP–ON EASTER RABBIT
a/k/a BUNNY CLIP–ON

hereinafter called the copyrighted works."

Well-Made argues that each agreement is merely an "instrument of conveyance," one of the authorized means for transferring rights to a copyright under 17 U.S.C. § 204(a), and evidences only a present transfer. The June 1979 agreement, however, plainly refers to an existing agreement between Angel Sewing and Dan-Dee, which the latter now asserts dates back to May 1978 and encompasses an assignment of copyright. It substantiates this contention by the deposition testimony and affidavit of Dan-Dee's president, Daniel Ranzman, that Angel Sewing's president, Edward Chang, orally assigned to Dan-Dee all rights, including copyright, to the Bunny Clip-on Doll and that Ranzman understood the parties intended the subsequent memoranda to confirm this agreement. Dan-Dee also points out that all of the copyrighted items manufactured since mid-1978 have carried a sewn-on label marked "© 1978 Dan-Dee Imports, Inc.", from which the inference may be drawn that Dan-Dee in fact had the authority to mark its goods in this fashion. *Cf.* 17 U.S.C. § 401(b) (form of copyright notice requires name of owner of copyright).

Defendant replies that the placement of "pursuant to agreement," following "works of art to be created or which were created by the Author" in the June 1979 agreement, favors a construction that the parties' oral agreement, if any, concerned the creation of copyrightable works. While that may be true, the language and structure of the first sentence in the June 1979 agreement do not exclude the possibility that Dan-Dee and Angel also agreed to transfer the copyright of any works the latter created. Whether they did thus remains an issue of fact for trial.

The principle of law on which Dan-Dee relies, and which Well-Made has apparently not contested, is that the requirements of 17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by "a note or memorandum of the transfer."[1]

The only case authority supporting the proposition which the parties have cited, or the Court has discovered, is *Khan v. Leo Feist, Inc.,* 70 F.Supp. 450 (S.D.N.Y.), aff'd, 165 F.2d 188 (2d Cir. 1947). That case involved infringement of a calypso song, "Rum and Coca-Cola," for which plaintiff had secured a copyright on March 1, 1943, in Trinidad, British West Indies, pursuant to the British Copyright Act of 1911 and Trinidad law, following an oral assignment from the song's author. A written assignment, stating that the author had "heretofore assigned" the copyright, was entered into on April 16, 1945, before plaintiff obtained a United States copyright on the basis of the Trinidad registration. Because the case involved interpretation of British copyright law, it is not clear authority in the present case.

■ The former copyright act provided that a copyright could be "assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright." 17 U.S.C. § 28 (1970) (superseded). Professor Nimmer has interpreted the addi-

tion of "a note or memorandum of the transfer" in new 17 U.S.C. § 204(a), as a codification of the holding in *Khan,* Nimmer on Copyrights, § 10.03[A] at 10–34 (1981). Such a view is not plainly at odds with the sparse legislative history on new § 204(a), declaring it "a somewhat broadened and liberalized counterpart of sections 28 and 29 of the present statute." H.R.Rep. No.94–1476, 94th Cong., 2d Sess. 128, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5659, 5744. Certainly the rationale of the Court of Appeals in *Khan,* that a subsequent memorandum confirming a prior oral assignment could satisfy the British Copyright Act's requirement that no assignment is valid "unless it is in writing," see 165 F.2d at 190 n.1 (quoting § 5(2) of British Act), as it would the statute of frauds, see 165 F.2d at 191–92, applies with equal force to the present statute. It is hornbook law, of course, that the memorandum need not be contemporaneous with the assignment, *e. g.,* 2 Corbin on Contracts, § 503 at 714–15.

■ Furthermore, the regulations respecting registration do not clearly preclude issuance of a copyright to an applicant who has only received oral assignment prior to the registration, since a "claimant" includes "a person or organization that has obtained . . . the *contractual right* to claim legal title to the copyright in an application for copyright registration." 37 C.F.R. § 202.-3(a)(3)(ii) n.1 (emphasis added). In this connection, it bears remembering that in a copyright infringement action a plaintiff must establish ownership of the copyright. See *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir. 1976). While a plaintiff who is also the author may rely on the certificate of registration as "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," 17 U.S.C. § 410(c), including ownership, this plainly would not preclude a defendant from challenging a transfer indicated on the certificate, and putting plaintiff to

---

1. "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent, . . ." 17 U.S.C. § 204(a).

proving the existence of at least a note or memorandum of the transfer. *Cf. Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F.Supp. 357, 363 (D.Del.1980) (proof of assignment of previously registered copyrights).

■ Accordingly, the Court holds that Dan-Dee was not required to have written evidence of the transfer from Angel Sewing as a prerequisite to the issuance of copyright registration for the Bunny Clip-on Doll, although such proof would, of course, be necessary on its copyright infringement claim.

■ In view of the foregoing, there is plainly an issue of fact as to the intention of Angel Sewing and Dan-Dee in entering into the two post-registration, agreements, in relation to the asserted prior oral assignment. This must be resolved by the finder of fact in light of "the agreement itself, the statements and actions of the parties contemporaneous with and following the agreement, oral testimony, affidavits [and] depositions." *Epoch Producing Corp. v. Killiam Shows, Inc.*, 522 F.2d 737, 746 n.7 (2d Cir. 1975).

Turning now to Well-Made's contention that this action was improperly commenced because Dan-Dee did not record its transfer from Angel Sewing prior to filing suit, there is certainly support for that proposition in the decidedly unambiguous language of § 205(d), *supra*, as confirmed by case authority. Thus in *Burns v. Rockwood Distributing Co.*, 481 F.Supp. 841, 846–47 (N.D. Ill.1979), it was held that an assignee's recordation of transfer was a "jurisdictional prerequisite to the institution of a copyright infringement action." That decision was subsequently followed in *Ruskin v. Sunrise Management*, 506 F.Supp. 1284, 1288–89 (D.Colo.1981).

Dan-Dee, however, does not seriously dispute that its action was improperly commenced under § 205(d), but to avoid the inconvenience of dismissal and filing a new action that Well-Made's interpretation apparently requires, it seeks leave to file an amended complaint which alleges that "a

written acknowledgment of the acquisition has been recorded in the United States Copyright Office." While strictly the pleading Dan-Dee seeks leave to file is, in this respect, a supplemental one under Rule 15(d), F.R.Civ.P., because the recordation of transfer is an event that has "happened since the date of the pleading sought to be supplemented," the mischaracterization of its motion is immaterial to whether it may receive the correct relief it actually seeks, see Rule 1; *United States for the use of Atkins v. Reiten*, 313 F.2d 673 (9th Cir. 1963); *accord, Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir.), *pet. for cert. dismissed*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980).

■ There is no question that leave to serve a supplemental pleading should be granted if it cures a jurisdictional defect. The Supreme Court pointed this out in *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), in upholding the district court's denial of a motion to dismiss despite the plaintiff's initial failure to file an application, which was a "non-waivable condition of jurisdiction," 426 U.S. at 76, 96 S.Ct. at 1889. Apposite here is the Court's statement that:

"A supplemental complaint in the District Court would have eliminated this jurisdictional issue; since the record discloses, both by affidavit and stipulation, that the jurisdictional condition was satisfied, it is not too late, even now, to supplement the complaint to allege this fact. Under these circumstances, we treat the pleadings as properly supplemented by the Secretary's stipulation that Espinosa had filed an application." 426 U.S. at 75, 96 S.Ct. at 1889.

See also *Davis v. Piper Aircraft Corp., supra*, 615 F.2d 606, where a divided panel of the fourth circuit permitted a supplemental pleading alleging the plaintiff's post-commencement qualification as executor of an estate to relate back under Rule 15(c) to the filing of the original complaint, and *Security Insurance Co. of New Haven v. United States*, 338 F.2d 444 (9th Cir. 1964), a case under the Miller Act, 40 U.S.C. §§ 270a–

270d (which requires in effect that suit be brought not less than 90 days nor more than one year after the last act for which claim is made), where the court permitted a supplemental pleading alleging expiration of the 90 days to relate back to the original filing date, when the pleading was not supplemented until more than one year had passed.

 Since it is clear that there is no prejudice to Well-Made from any delay in serving the supplemental pleading, for example, the running of a limitations period or increased difficulty in obtaining proof or witnesses, plaintiff's proposed amended and supplemental complaint will be accepted for filing and service, and the motion to dismiss denied.

SO ORDERED.

The Clerk of the Court is directed to forward copies of this memorandum and order to counsel for the parties.